## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**ERNEST J GIUSTI, III**                                                   CIVIL ACTION

**VERSUS**                                                                     No. 25-1347

**ALLIANT INSURANCE**
**SERVICES, INC., ET AL.**                                          SECTION I

### <u>ORDER AND REASONS</u>

Plaintiff Ernest J. Giusti, III ("plaintiff") brings this action, individually and on behalf of all others similarly situated ("the proposed class" or "the putative class"), for damages arising from the alleged mismanagement of an employee benefits healthcare plan, which resulted in delayed payment of approved claims, inability to obtain medical care, and other losses to plan beneficiaries.[1]

Before the Court are two motions to dismiss. The first was filed by defendant Alliant Insurance Services, Inc. ("Alliant"),[2] and the second was filed by defendants United Health Group, Inc. ("United Health Group"), United Healthcare, Inc. ("United Healthcare"), and Assured Benefits Administrator, Inc. ("ABA") (together with Alliant, "moving defendants").[3] Plaintiff opposed both motions.[4] The moving defendants filed respective replies.[5]

---

[1] *See* R. Doc. No. 33.
[2] R. Doc. No. 35.
[3] R. Doc. No. 39.
[4] *See* R. Doc. Nos. 41–42.
[5] R. Doc. Nos. 45–46.

Moving defendants also filed a motion[6] to stay discovery pending resolution of their motions to dismiss.[7] Plaintiff filed a response[8] in opposition and moving defendants filed a reply.[9]

Shortly thereafter, the Court held a telephone status conference, with counsel for all parties participating,[10] to discuss the pending motions.[11] At this conference, the Court ordered each defendant to "inform the Court what role, if any, their client(s) played in making sure that plaintiff actually received benefits approved by the plan" and "advise whether their client(s) in any way participated in any decision to adjust, cease, or delay the actual payment of benefits previously approved pursuant to the terms of the plan."[12]

Defendants each filed a response to the Court's order,[13] in which each disclaims any involvement with the untimely payment of claims and largely disagrees with the other defendants' characterization of their respective roles. After considering the

---

[6] R. Doc. No. 51.

[7] The motion alternatively sought to stay discovery until the case was consolidated with a separate case brought by plaintiff against defendant HPS Advisory Services, LLC ("HPS"). *See* R. Doc. No. 51-1, at 2. The Court has since consolidated the cases. *See* R. Doc. No. 56.

[8] R. Doc. No. 54.

[9] R. Doc. No. 55.

[10] This included counsel for non-moving defendant HPS—a defendant that was originally in this case but was dismissed without prejudice by this Court on December 16, 2025, for plaintiff's failure to serve. *See* R. Doc. No. 49. Plaintiff filed a separate lawsuit against HPS, *see Giusti v. Alliant Insurance Services, Inc., et al.*, E.D. La. Case No. 25-1347, which was consolidated with this original case on January 30, 2026. *See* R. Doc. No. 56. Reference to "defendants" herein shall be understood to refer to moving defendants *and* HPS collectively.

[11] *See* R. Doc. No. 57.

[12] *Id.* at 1–2.

[13] R. Doc. No. 59–61.

motions, responsive briefing, and supplemental responses, the Court declines to dismiss plaintiff's amended complaint at this time and, instead, will allow plaintiff one last opportunity to amend his complaint.

## I.    BACKGROUND

Plaintiff and members of his proposed class are "franchise owners and employees" of Goosehead Insurance ("Goosehead").[14] In 2023, plaintiff and other members of the proposed class, along with their spouses, domestic partners, and/or dependents, were able to join a medical insurance plan through Goosehead (the "Plan").[15] Plaintiff and the putative class members paid premiums for their participation in the Plan.[16]

Plaintiff explains that he, and members of his family that were also participants of the Plan, underwent medical treatment during the lifetime of the Plan for which defendants "failed to pay and/or timely pay in accordance with the Plan."[17] Importantly, defendants had already notified plaintiff that these medical services were "covered under the Plan."[18] This delay in payment and/or non-payment of approved claims caused medical providers to withdraw care and engage collections agencies, and also necessitated that plaintiff make out-of-pocket payments to providers to ensure that he and his family "could continue receiving healthcare."[19]

---

[14] R. Doc. No. 33 ¶ 8.
[15] *Id.* ¶ 10.
[16] *Id.* ¶ 27.
[17] *Id.* ¶¶ 33, 40–41, 46–47, 50–51.
[18] *Id.* ¶ 16; *see also* R. Doc. No. 41, at 7 ("[T]here was no denial of the claim[s]. Defendants simply indicated they would pay, then did not.").
[19] R. Doc. No. 33 ¶¶ 36, 42, 48, 52, 57.

Sometime thereafter, "without warning," the Plan was cancelled "while unpaid claims remained outstanding."[20] Plaintiff alleges that he and the proposed class received notification of the cancellation, but only after the cancellation had occurred and "with no mechanism for an administrative appeal or remedy."[21] This cancellation "led to the denial of medical care to Plaintiff and [his family], inability to obtain care as intended, and/or the delay of such care, in addition to out-of-pocket expenses that have not been recovered."[22]

Plaintiff filed his lawsuit against moving defendants and HPS (collectively, "defendants") on June 30, 2025.[23] He brought claims on behalf of himself and all others similarly situated for violations of the Employee Retirement Income Security Act ("ERISA"), pursuant to 29 U.S.C. §§ 1132(a)(1)(B) and 1132(a)(3), as well as various state law claims: breach of contract,[24] breach of the implied covenant of good faith and fair dealing,[25] violation of Louisiana Revised Statute 22:978, which prescribes the notice requirements for cancellation of health insurance,[26] and unjust enrichment.[27] On October 28, 2025, after moving defendants had filed their first

---

[20] *Id.* ¶ 21.
[21] *Id.* ¶ 22.
[22] *Id.* ¶ 67.
[23] R. Doc. No. 1.
[24] *See* R. Doc. No. 33 ¶¶ 91–102.
[25] *Id.* ¶¶ 103–108.
[26] *Id.* ¶¶ 109–113.
[27] *Id.* ¶¶ 114–121.

motions to dismiss,[28] plaintiff moved to file an amended complaint,[29] which this Court granted.[30]

Plaintiff filed his amended complaint on October 29, 2025,[31] and shortly thereafter moving defendants filed two motions to dismiss.[32] The first was filed by Alliant and the second was filed by United Health Group, United Healthcare, and ABA.[33] Both motions argue that plaintiff's amended complaint should be dismissed because it impermissibly "group" or "shotgun" pleads.[34] Both motions also argue that plaintiff cannot state a claim under ERISA, either pursuant to §§ 1132(a)(1)(B) or 1132(a)(3),[35] and that ERISA preempts plaintiff's state law claims.[36] Defendants United Health Group, United Healthcare, and ABA additionally argue that plaintiff's class allegations should be stricken from the amended complaint because the proposed class is not ascertainable and plaintiff cannot establish predominance as a matter of law.[37]

Plaintiff filed a response in opposition to each motion,[38] maintaining that his group pleading is sufficient and appropriate in this case as his amended complaint

---

[28] *See* R. Doc. Nos. 16–17.

[29] R. Doc. No. 28.

[30] *See* R. Doc. No. 31 (minute entry granting plaintiff's motion for leave to file his first amended complaint).

[31] R. Doc. No. 33.

[32] *See* R. Doc. Nos. 35, 39.

[33] *See generally* R. Doc. Nos. 35, 39.

[34] R. Doc. No. 39-1, at 9, 12, 14–16; R. Doc. No. 35-1, at 4, 7.

[35] R. Doc. No. 35-1, at 9–17; R. Doc. No. 39, at 7–14.

[36] R. Doc. No. 35-1, at 17–21; R. Doc. No. 39-1, at 16–17.

[37] R. Doc. No. 39-1, at 18–24.

[38] *See* R. Doc. Nos. 41–42.

provides fair notice as to the nature of his claims and discovery will serve to narrow the claims and defendants at a later stage.[39] He also contends that ERISA authorizes suit against moving defendants, pursuant to either §§ 1132(a)(1)(B) or 1132(a)(3).[40] In response to the motion to strike class allegations, plaintiff disputes that the proposed class is not ascertainable and asserts that the arguments raised regarding the sufficiency of his class allegations are "more appropriate for a certification hearing."[41] Moving defendants filed separate replies to plaintiff's responses,[42] in which they largely re-urge the arguments articulated in their motions to dismiss.

For the reasons that follow, the Court determines that it is appropriate to deny moving defendants' motions to dismiss and permit plaintiff a further opportunity to amend his complaint.

## II.    LEGAL STANDARDS

Federal Rule of Civil Procedure 12(b)(6) allows defendants to move for dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must meet the requirement in Rule 8(a)(2) that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *Wampler v. Sw. Bell Tel. Co.*, 597 F.3d 741, 744 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). While this short and plain statement does not require detailed factual

---

[39] R. Doc. No. 42, at 7–9; R. Doc. No. 41, at 8–11.
[40] R. Doc. No. 42, at 9; R. Doc. No. 41, at 11–12.
[41] R. Doc. No. 41, at 14–15.
[42] R. Doc. Nos. 45–46.

allegations, it "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation modified). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Culbertson v. Lykos*, 790 F.3d 608, 616 (5th Cir. 2015) (citation modified).

The face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 255–57 (5th Cir. 2009). A complaint is insufficient if it contains "only labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (citation modified). The complaint must "provide the defendant with fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Pub. Emps. Ret. Sys. of Miss. v. Amedisys, Inc.*, 769 F.3d 313, 320 (5th Cir. 2014).

When considering a motion to dismiss, a court views the complaint "in the light most favorable to plaintiff, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in plaintiff's favor." *Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004). A court must limit its review to "the complaint, any

documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010) (citing *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)).

## III.    ANALYSIS

### a.    Group or shotgun pleading

As a threshold matter, the Court addresses the argument made in both motions to dismiss that plaintiff's amended complaint is deficient because it impermissibly "group" or "shotgun" pleads.[43]

Shotgun pleadings are those which "fail[] to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Alexander v. Dresser*, L.L.C., No. 21-161, 2022 WL 509366, at \*5 (W.D. La. Feb. 18, 2022) (internal quotations and alterations omitted). One such type of shotgun

---

[43] R. Doc. No. 39-1, at 9, 12, 14–16 ("Here, Plaintiff's shotgun pleading scrambles allegations against each of the Defendants and makes no reference to individual Defendants' conduct. Plaintiff's Amended Complaint continues to improperly blur the actions of the Defendants."); R. Doc. No. 35-1, at 4, 7 ("Almost every allegation mentioning Alliant is 'group pleaded' along with every other Defendant."), 11 ("Plaintiff does not in any way distinguish the alleged actions of Alliant from the other defendants."). Although both motions seem to argue, to some extent, that group pleading amounts to a failure to state a claim pursuant Federal Rule of Civil Procedure 12(b)(6), *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the argument really pertains to whether plaintiff's form of pleading complies with Federal Rule 8(a)(2). *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015) ("Complaints that violate either Rule 8(a)(2) or Rule 10(b), or both, are often disparagingly referred to as 'shotgun pleadings.'"). Of course, "pleading deficiencies may impact application of the well-established standards for stating a claim set out in" *Twombly* and *Iqbal. Valadez v. City of San Antonio*, No. 21-02, 2022 WL 1608016, at \*4 (W.D. Tex. May 20, 2022). But the Court will separately address the Rule 12(b)(6) analysis *infra*, Section III(b).

pleading, as is relevant to moving defendants' argument, is one which "fail[s] to distinguish between the actions of named defendants." *Hicks v. Andrews*, No. 23-81, 2024 WL 1202922, at \*7 (E.D. Tex. Feb. 28, 2024), *report and recommendation adopted*, No. 23-81, 2024 WL 1198859 (E.D. Tex. Mar. 20, 2024); *O'Neal v. Universal Prot. Serv., LLC*, No. 21-737, 2022 WL 1631970, at \*5 (M.D. La. May 23, 2022) (finding the plaintiff's complaint was an impermissible "shotgun pleading" where the complaint "indiscriminately allege[d] nine claims against two separate Defendants without any indication whether (or how) each Defendant [wa]s liable."); *Hinojosa v. Livingston*, 807 F.3d 657, 684 (5th Cir. 2015) (Jones, J., dissenting) (describing this form of shotgun pleading as when a plaintiff's complaint "uses blanket terms covering all the defendants, by lumping them together or [referring to] them collectively").

Plaintiff concedes that he does not specifically allege the actions each defendant took that caused or contributed to the untimely payments and non-payments of his approved benefits. However, he maintains that he "cannot know the exact explanation for the plan's mismanagement" or "which of [the moving defendants] (or all) are responsible for this administrative failure," because the alleged "mismanagement" of the Plan is "hidden from the view" of plaintiff, and any potential class members.[44] He, therefore, does not and cannot know "which [of moving defendants'] role[s] led predominantly to the failure of the Plan to make proper payments, or whether all share equal responsibility."[45] He avers that his amended

---

[44] R. Doc. No. 41, at 2.
[45] *Id.* at 7.

complaint provides fair notice to moving defendants of his claims,[46] and that moving defendants' group and shotgun pleading arguments are merely an "attempt to capitalize on these unknowns . . . to avoid discovery."[47]

Not every instance in which a plaintiff's pleadings lumps defendants together amounts to impermissible group or shotgun pleading. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, No. 15-2177, 2016 WL 4479507, at *3 (E.D. La. Aug. 25, 2016) (Morgan, J.), *aff'd in part, rev'd in part and remanded on other grounds*, 869 F.3d 381 (5th Cir. 2017) ("A complaint that contains 'group allegations' and 'lumps together' defendants is not *ipso facto* in violation of Rule 8."); *Valadez*, 2022 WL 1608016, at *6 (acknowledging that lumping defendants together may be improper in some circumstances, but concluding that it "does not mean that lumping defendants together is insufficient to state a claim in all circumstances"). The controlling aspect in each case is whether "the complaint, with its 'group allegations,' gives each defendant adequate notice" of the plaintiff's claims and grounds upon which they rest. *Id.*; *Valadez*, 2022 WL 1608016, at *6 ("Ultimately, it boils down to whether the pleading provides fair notice of what the claims are and the grounds supporting them.").

For example, courts have found that a complaint is sufficient, notwithstanding "group" pleading or lumping of defendants, where the complaint otherwise explains

---

[46] *See id.* at 9–11; R. Doc. No. 42, at 7–8.

[47] R. Doc. No. 41, at 2; *see also id.* at 10 ("It is unclear which of these functions led to the untimely payments and non-payments. Thus, suit is proper against each for the losses sustained by the class.").

the roles and interconnectedness of the defendants. *See, e.g.*, *Hicks*, 2024 WL 1202922, at *8 (holding that the pleading was "sufficient to notify [the] [d]efendants of the claims against them – thereby allowing them to prepare responsive pleadings – and [did] not constitute an improper 'shotgun' pleading" in part because the notice of removal provided "detailed allegations regarding the interrelatedness of the various" defendants).

In fact, district courts evaluating the sufficiency of group pleading against ERISA defendants have found such pleading permissible given their interconnectedness and collective responsibilities with respect to the subject plan. *See Surgery Ctr. of Viera, LLC v. Meritain Health, Inc.*, No. 19-1694, 2020 WL 7389987, at *9 (M.D. Fla. June 1, 2020), *report and recommendation adopted*, No. 19-1694, 2020 WL 7389447 (M.D. Fla. June 16, 2020) (finding the provider-plaintiff's complaint, which alleged harm from partial reimbursement by plan-defendants for medical services provided to a plan beneficiary, was not an impermissible shotgun pleading because the "[d]efendants [were] inextricably intertwined – [one] is the plan sponsor and plan administrator, [another] is the third-party administrator . . . and the Plan is the vehicle under which the subject claim was submitted"); *Igo v. Sun Life Assurance Co. of Canada*, 652 F. Supp. 3d 929, 935 (S.D. Ohio 2023) (finding that the plaintiff's claim for denied life insurance benefits brought collectively against the plan's life insurance company, plan sponsor, and plan administrator was not impermissible group pleading because "[a]s alleged in the complaint, all defendants

collectively have responsibilities over administ[ration] of the Plan and paying or denying benefits under the Plan").

Moreover, the Fifth Circuit has stated, albeit in a different context, that ERISA plaintiffs "generally lack the inside information necessary to make out their claims in detail" and, therefore, plaintiffs should not be held to "overly burdensome pleading requirements in ERISA contexts." *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 728–29 (5th Cir. 2018) (quoting *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 598 (8th Cir. 2009)); *see also id.* at 728 (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016) ("[A]n ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access, as long as the facts alleged tell a plausible story.")).

After reviewing plaintiff's amended complaint and the Plan document,[48] the Court finds that the use of "defendants" to describe the "common factual allegations" against moving defendants does not amount to impermissible group or shotgun pleading.[49] The allegations in the amended complaint are sufficient to give defendants notice of the nature of plaintiff's claims and the grounds upon which they rest, such that defendants can adequately respond and defend against the claims. It is clear that plaintiff's claims arise from the "nonpayment and/or failure to timely pay claims" which he was entitled to under the Plan.[50] Plaintiff's individual factual

---

[48] Attached to the motion to dismiss filed by United Health Group, United Healthcare, and ABA. *See* R. Doc. No. 39-2.
[49] *See* R. Doc. No. 33 ¶¶ 7–25.
[50] *Id.* ¶ 17.

allegations serve to further demonstrate the nature of his claims and the harm he has suffered as a result of not receiving, timely or at all, the benefits to which he was entitled.[51] While plaintiff "must ultimately prove [his] case separately against" each defendant, *Igo*, 652 F. Supp. 3d at 935, determining which defendant is responsible for this non- or delayed-payment failure is more appropriately reserved for later, after plaintiff has had an opportunity to pursue discovery on the issue.[52] *Cf. Innova Hosp.*, 892 F.3d at 730–31 ("While a plaintiff must offer sufficient factual allegations to show that he or she is not merely engaged in a fishing expedition or strike suit, we must also take account of his or her limited access to crucial information." (quoting *Braden*, 588 F.3d at 598) (internal alterations omitted)).

### b.    *Plaintiff's ERISA claims pursuant to §§ 1132(a)(1) and 1132(a)(3)*

In finding that plaintiff's pleadings were adequate in form, the Court must now determine whether plaintiff has substantively stated a claim sufficient to survive a Rule 12(b)(6) dismissal. *See Bank of Abbeville & Tr. Co. v. Commonwealth Land Title*

---

[51] *See id.* ¶¶ 26–60.

[52] Having determined that the amended complaint would not be dismissed for its group pleading, the Court attempted to avoid wasting the resources of both the parties and the Court by ordering counsel for each defendant to 'inform the Court what role, if any, their client(s) played in making sure that plaintiff actually received benefits approved by the plan" and "advise whether their client(s) in any way participated in any decision to adjust, cease, or delay the actual payment of benefits previously approved pursuant to the terms of the plan." *See* R. Doc. No. 57, at 1–2. Such responses were intended to avoid lengthy discovery for the purpose of determining which defendant exercised control over the portion of the claims process of which plaintiff complains. Yet, perhaps unsurprisingly, defendants' responses were unhelpful in this regard as each defendant disclaimed any involvement with the untimely payment of claims and largely disagrees with the other defendants' characterization of their respective roles in regards to the Plan. *See generally* R. Doc. Nos. 59–61; *see generally infra* Section III(b)(1).

*Ins. Co.*, 201 F. App'x 988, 990 (5th Cir. 2006) ("[M]ere compliance with Rule 8 does not itself immunize the complaint against a motion to dismiss. The [plaintiff] confuses form with substance. Rule 8(a)(2) specifies the conditions of the formal adequacy of a pleading. It does not specify the conditions of its substantive adequacy, that is, its legal merit." (internal quotations and citations omitted)).

Plaintiff's amended complaint seeks redress pursuant to 29 U.S.C. § 1132(a)(1) or, in the alternative, § 1132(a)(3).[53] Section 1132(a) sets forth the types of civil enforcement actions that may be brought, and who may bring them, under ERISA. *Hager v. DBG Partners, Inc.*, 903 F.3d 460, 469 (5th Cir. 2018) (describing § 1132(a) as encompassing ERISA's "potential avenues for [civil] enforcement"). As is relevant to plaintiff's first-sought avenue for relief, § 1132(a)(1) states that a civil action may be brought by a "participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." § 1132(a)(1)(B).

Claims brought pursuant to § 1132(a)(1)(B) "are generally limited to actions respecting the interpretation of plan documents and the payment of claims." *Manuel v. Turner Indus. Grp., L.L.C.*, 905 F.3d 859, 864 (5th Cir. 2018) (internal alterations omitted). Section 1132(a)(1)(B) does not "permit the recovery of extracontractual

---

[53] *See* R. Doc. No. 33 ¶¶ 84–85. Plaintiff's amended complaint also states that "defendants breached ERISA" §§ 1109 and 1133. *See id.* ¶ 86–87. Moving defendants interpreted this to mean separate causes of action. *See* R. Doc. No. 39-1, at 13; R. Doc. No. 35-1, at 12, 16. The Court, however, understands these sections as being cited in reference to the § 1132(a)(3) claim. *See* § 1132(a)(3) (allowing suit to be brought for "violat[ions] [of] any provision of this subchapter or the terms of the plan").

14

damages or damages based on undue delay in administration of a disputed claim." *Hamann v. Indep. Blue Cross*, 543 F. App'x 355, 357 (5th Cir. 2013). "Instead, a plain reading of this provision provides that when a participant or beneficiary believes that benefits promised to him under the terms of the plan are not provided, he can bring suit seeking provision of those benefits." *Id.* (internal quotations omitted).

The "proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs Inc.*, 703 F.3d 835, 845 (5th Cir. 2013) (internal quotations and citations omitted). While this often includes named plan administrators or fiduciaries, § 1132(a)(1)(B) does not limit lawsuits for benefits to only such defendants. *See id.* at 843–45 (holding that a third-party administrator may be held liable for benefits pursuant to § 1132(a)(1)(B)) ("The plain language of § 1132(a)(1)(B) . . . does not limit the scope of defendants that a claimant may bring a lawsuit against.").

However, a "party will be exposed to liability" pursuant to § 1132(a)(1)(B) "only if it exercises 'actual control' over the administration of the plan." *Id.* at 844–45; *Bryant v. Express Scripts Inc.*, No. 20-1343, 2021 WL 1216888, at *6 (W.D. La. Mar. 15, 2021), *report and recommendation adopted*, No. 20-1343, 2021 WL 1207722 (W.D. La. Mar. 30, 2021) ("[While] that party usually is the plan itself or the designated plan administrator . . . another party may be sued if it exercises actual control over the claims process."); *see also Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 251 (5th Cir. 2008) ("Fiduciary duties may thus arise either from the terms of the

governing plan *or from acts and practices in carrying it out*." (emphasis added)). "The mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient for liability under § 1132(a)(1)(B)." *LifeCare*, 703 F.3d at 845 (cleaned up).

As for plaintiff's alternatively-sought avenue for relief, "ERISA includes numerous requirements beyond the mere payment of benefits in accord with a plan's written terms," and § 1132(a)(3) serves as the civil enforcement mechanism "for certain injuries that result from some of these other ERISA violations." *Manuel*, 905 F.3d at 864. Section 1132(a)(3) states that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

In contrast with § 1132(a)(1), § 1132(a)(3) places no "limit . . . on the universe of possible defendants." *Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 246 (2000). It does, however, limit the type of damages recoverable to "appropriate equitable relief." *See id.* at 253. For this reason, although not categorically excluded, money damages are typically not recoverable through § 1132(a)(3). *See Cent. States, Se. & Sw. Areas Health & Welfare Fund ex rel. Bunte v. Health Special Risk, Inc.*, 756 F.3d 356, 361 (5th Cir. 2014) ("[W]hile almost invariably suits seeking (whether by judgment, injunction, or declaration) to compel the defendant to pay a sum of money to the plaintiff are suits for money damages

16

since they seek no more than compensation for loss resulting from the defendant's breach of legal duty, there are some instances in which equitable relief can result in monetary compensation for a plaintiff." (cleaned up)); *see also Hager*, 903 F.3d at 469 (implying that restitution may be a viable remedy pursuant to § 1132(a)(3) if it was "traditionally available in equity"); *Harris Tr.*, 530 U.S. at 253 ("[A]n action for restitution against a transferee of tainted plan assets satisfies the 'appropriate[ness]' criterion in § 502(a)(3). Such relief is also 'equitable' in nature.").

Moreover, the Fifth Circuit has made clear that "generally, an ERISA § [1132](a)(3) claim for equitable relief *may not* be maintained when ERISA § [1132](a)(1)(B) 'affords an adequate remedy.'" *Manuel*, 905 F.3d at 865 (cleaned up) (emphasis added). This is not to say that a plaintiff whose § 1132(a)(1) claim is unsuccessful is therefore entitled to proceed on a § 1132(a)(3) claim. *See Hollingshead v. Aetna Health Inc.*, 589 F. App'x 732, 737 (5th Cir. 2014) ("The simple fact that [the plaintiff] cannot prevail on his claim under section 1132(a)(1) does not make his alternative claim under section 1132(a)(3) viable." (internal alterations omitted)). Rather, the Court must determine whether a plaintiff's alleged injury creates a cause of action pursuant to § 1132(a)(1)(B) and, if so, the plaintiff's § 1132(a)(3) claim cannot proceed. *See Manuel*, 905 F.3d at 865 ("A claimant whose injury creates a cause of action under ERISA § 502(a)(1)(B) may not proceed with a claim under ERISA § 502(a)(3)." (emphasis in original) (cleaned up)).

As stated by the Fifth Circuit: "when a beneficiary simply wants what was supposed to have been distributed under the plan, the appropriate remedy is

17

available under § 1132(a)(1), rather than § 1132(a)(3)." *Hager*, 903 F.3d at 469 (cleaned up); *Mowdy v. Huntington Ingalls Inc.*, No. 19-570, 2021 WL 4242364, at *2 (S.D. Miss. Jan. 19, 2021). A plaintiff cannot escape this determination by "simply framing a claim as equitable relief." *Cent. States*, 756 F.3d at 361 ("Simply framing a claim as equitable relief is insufficient to escape a determination that the relief sought is legal."); *Hager*, 903 F.3d at 469 (noting that although the plaintiff's claim "could arguably be characterized as seeking restitution," it was clear that the remedy sought "to impose liability and require the defendant to pay the plaintiff a sum of money" which was legal rather than equitable in nature).

Moving defendants argue, first, that plaintiff's amended complaint fails to state a claim pursuant to § 1132(a)(1) because they are not Plan administrators or fiduciaries.[54] Next, moving defendants argue that plaintiff's § 1132(a)(3) claim fails because: such claims authorize only equitable relief, which they argue plaintiff does not request; and plaintiff's § 1132(a)(1) claim is the proper mechanism for providing the relief that plaintiff seeks, namely, benefits he is entitled to pursuant to the Plan. The Court will address both arguments in turn.

1. Are moving defendants proper defendants pursuant to § 1132(a)(1)?

Moving defendants rely on the language of the Plan to support their contention that they are not proper defendants pursuant to § 1132(a)(1).[55] Specifically, United Health Group, United Healthcare, and ABA argue that the Plan names defendant

---

[54] R. Doc. No. 39-1, at 10; R. Doc. No. 35-1, at 13.
[55] R. Doc. No. 35-1, at 4; R. Doc. No. 39-1, at 11.

HPS as the Plan Administrator and Fiduciary and that the Plan "provides that 'full and final authority to adjudicate [claims] and make determination as to their payability by and under the Plan belongs to and resides solely with the Plan Administrator.'"[56] They also point out that the Plan names ABA as the Third Party Administrator and states that "[t]he Third Party Administrator is not a fiduciary of the Plan and does not have discretionary authority to make claims payment decisions or interpret the meaning of the Plan terms."[57] Alliant likewise argues that the Plan does not identify it as the Plan's sponsor, named fiduciary, or third-party administrator and, therefore, plaintiff cannot establish that Alliant "had any role in Plan administration."[58]

However, as the Court has already noted, whether a defendant is a fiduciary or plan administrator such that it is a proper defendant pursuant to § 1132(a)(1)(B) does not turn only on whether the defendants are so named in the Plan, but includes an inquiry into whether that defendant exercised "actual control" over the claims process. *LifeCare*, 703 F.3d at 844–45 ("[I]f an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits [pursuant to § 1132(a)(1)(B)]."); *Bannistor v. Ullman*, 287 F.3d 394, 401 (5th Cir. 2002) ("[An ERISA] 'fiduciary' should be defined not only by reference to particular titles . . . but also by considering the authority which a

---

[56] R. Doc. No. 39-1, at 11 (quoting R. Doc. No. 39-2, at 47).
[57] *Id.* (quoting R. Doc. No. 39-2, at 47).
[58] R. Doc. No. 35-1, at 4, 7; *see also id.* at 12 (arguing that plaintiff failed to recognize that the Plan document disclosed the Plan's administrative roles).

particular person has or exercises over an employee benefit plan."). The Court finds that this inquiry is more appropriately resolved on a motion for summary judgment or trial, after discovery has allowed for factual development regarding each of defendants' respective roles and responsibilities as it relates to the payment of approved claims. *See LifeCare*, 703 F.3d at 844 (explaining that "courts finding liability under § 1132(a)(1)(B) . . . apply a restrained functional test" and arrived at a decision based on facts demonstrating the third-party administrator's actual control, rather than the language in the contract alone, that the third-party administrator was a proper defendant); *see also Woods v. Riverbend Country Club, Inc.*, 320 F. Supp. 3d 901, 908 (S.D. Tex. 2018) (deciding this issue on a motion for summary judgment and considering both the plan language as well as facts elicited during discovery).

Moreover, the Court is not persuaded that the Plan document language that moving defendants reference is instructive with respect to the present issue, as it seems this language pertains to the defendants' roles with respect to the consideration and determination of submitted claims for benefits, not to the defendants' roles with respect to the payment of approved claims.[59] Whether moving defendants plausibly exercised actual control over any portion of the claims process that involves the payment of approved claims is a separate question from whether,

---

[59] *See* R. Doc. No. 39-2, at 47–48. It is therefore possible, despite Alliant's position to the contrary, *see* R. Doc. No. 35-1, at 6–7, that it is not mentioned in the Plan document but still exercises actual control over the portion of the claims process at issue.

and the extent to which, they exerted control over the determination of benefits pursuant to the terms of the Plan. *Cf. Kirschbaum*, 526 F.3d at 250–51 ("An ERISA fiduciary for one purpose is not necessarily a fiduciary for other purposes. Rather, a person is a fiduciary only 'to the extent' he has or exercises specified authority, discretion, or control over a plan or its assets." (internal citations omitted)); *Humana Health Plan, Inc. v. Nguyen*, 785 F.3d 1023, 1027 (5th Cir. 2015) ("[T]hird-party service providers can serve as ERISA fiduciaries in one capacity and non-fiduciaries in another.").

For these reasons, the Court declines to dismiss plaintiff's motion on this ground.

### 2.  Is the relief plaintiff seeks legal or equitable?

Moving defendants' argument with respect to plaintiff's § 1132(a)(3) claim is driven by their characterization of plaintiff's injury and requested relief. They contend that plaintiff's § 1132(a)(3) claim requests monetary damages, rather than equitable relief, and that such damages "represent the claims for Plan benefits Plaintiff believes should have been awarded" and therefore § 1132(a)(1) affords an adequate remedy.[60]

The Court agrees that at some points, plaintiff's amended complaint seems to seek the benefits owed to him and the other members of the putative class from the Plan that were deemed covered by the Plan but were never dispersed.[61] At other

---

[60] R. Doc. No. 35-1, at 15; R. Doc. No. 39-1, at 13.

[61] *See* R. Doc. No. 33 ¶ 16; *see also* R. Doc. No. 41, at 6 (explaining that he seeks reimbursement for the out-of-pocket expenses he has paid due to delays in processing pending claims).

points, plaintiff's alleged harm seems to include damages associated with defendants'

prolonged retention of benefits already approved and owed to him[62] and his amended

complaint could be read to seek equitable relief of such allegedly improper, prolonged

retention.[63] *See CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011) (noting, in the

context of an ERISA case, that "[e]quity courts possessed the power to provide relief

in the form of monetary 'compensation' for a loss resulting from a trustee's breach of

duty, or to prevent the trustee's unjust enrichment"); *see also Dunnigan v. Metro. Life

Ins. Co.*, 277 F.3d 223, 228-29 (2d Cir. 2002) (finding that a beneficiary may recover

interest on late payments of benefits as equitable relief under ERISA).

Determining the relief sought and injury alleged drives whether § 1132(a)(1)

affords plaintiff an adequate remedy and, consequently, whether plaintiff's

§ 1132(a)(3) claim may proceed. *See Manuel*, 905 F.3d at 865. Ambiguities as to the

relief sought by plaintiff make this determination implausible at this juncture.

Moreover, although not raised by the parties, the Court questions whether

§ 1132(a)(1) provides adequate relief to plaintiff and the putative class considering

---

[62] *See, e.g.*, R. Doc. No. 33 ¶ 33 ("Plaintiff received notice that Defendant(s) failed to pay, and/or *failed to timely pay* in accordance with the plan . . . ." (emphasis added)); *id.* ¶ 35 ("Due to nonpayment, Sprout Pediatrics withdrew care."); *id.* ¶ 52 (describing how defendants' alleged failure resulted in a provider engaging a collections agency); R. Doc. No. 41, at 6 (stating that the fact that defendants may have "finally satisfied" some of the claims "does not resolve the harm done to [plaintiff] and the putative class").

[63] *See, e.g.*, R. Doc. No. 33 ¶ 80 ("Absent a class action, Defendants will likely retain the benefits of their wrongdoing. . . . and Defendants will be allowed to continue these violations of law and to retain the proceeds of its ill-gotten gains."); *see also id.* ¶¶ 114–121 (pleading, in the alternative, an unjust enrichment claim against defendants for wrongful retention of plaintiff's benefits); *id.* at 19 (seeking "any other relief provided by law").

the Plan is now terminated.[64] *See Hager*, 903 F.3d at 469 (explaining that the remedy afforded by § 1132(a)(1)(B) is "unavailable to a plaintiff whose employer's plan had been discontinued, reasoning that if the plan is defunct, a plaintiff cannot recover benefits due under the plan's terms").

There is both lack of clarity in the amended complaint and lack of briefing by the parties on the issue of the relief requested and recoverable by plaintiff given the alleged harm and cancellation of the Plan. The Court finds that it is appropriate to deny the motion to dismiss and allow plaintiff one additional opportunity to cure this, and other,[65] potentially dispositive ambiguities in a second amended complaint.

Having so decided, the Court will not reach moving defendants' other arguments regarding ERISA preemption of plaintiff's state law claims and striking the class allegations from the amended complaint.[66] Such arguments will be

---

[64] *Id.* ¶ 21.

[65] There are other notable issues with plaintiff's amended complaint that the Court does not discuss at length herein. For example, plaintiff's claims are based upon alleged violations of the terms of the Plan, § 1132(a)(1)(B), and provisions of ERISA, § 1132(a)(3), yet plaintiff does not point to which terms of the Plan or which provisions of ERISA were violated, aside from, for the latter, making general reference to 29 U.S.C. §§ 1109 (outlining ERISA liability for breach of fiduciary duty) and 1133 (outlining ERISA requirements for claims procedures) and generally stating that "Defendants breached ERISA by failing to follow the proper procedure for cancellation of health insurance coverage," without citing any particular provision of ERISA explaining the proper procedure for cancelling the Plan. The Court is unable to identify any terms of the Plan or provisions of ERISA that establish that defendants' alleged actions amount to a remediable violation pursuant to either § 1132(a)(1)(B) or § 1132(a)(3). *See Harris Tr.*, 530 U.S. at 247 ("ERISA's comprehensive and reticulated scheme warrants a cautious approach to inferring remedies not expressly authorized by the text . . . ." (internal quotations omitted)). To avoid the possibility of dismissal on this ground, plaintiff should take care to cure these potential deficiencies in his second amended complaint.

[66] *See* R. Doc. No. 35-1, at 17–23; R. Doc. No. 39-1, at 16–24.

addressed if they are applicable to the second amended complaint and re-raised by defendants. Likewise, because moving defendants' motion[67] to stay discovery was premised on the resolution of the motions to dismiss,[68] and the motions to dismiss are now resolved, their motion to stay is denied as moot.

## IV.    CONCLUSION

**IT IS ORDERED** that moving defendants' motions[69] to dismiss are **DENIED**.

**IT IS ORDERED** that moving defendants' motion[70] to stay is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that plaintiff is granted leave to file a second amended complaint no later than **MARCH 20, 2026**.

New Orleans, Louisiana, February 26, 2026.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**

---

[67] R. Doc. No. 51.
[68] *See id.* at 2 ("[Moving defendants] move this Court to stay discovery until it resolves Defendants' pending Motions to Dismiss the Amended Complaint.").
[69] R. Doc. Nos. 35, 39.
[70] R. Doc. No. 51.